[No. C064967. Third Dist. Nov. 9, 2012.]

In re Q.N., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff, v.
Q.N., Defendant and Respondent;
SACRAMENTO COUNTY OFFICE OF EDUCATION, Appellant.

## COUNSEL

Girard Edwards & Hance, Heather M. Edwards and L. Thomas Newcomb for Appellant.

Carol L. Foster and George L. Bond, under appointments by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**RAYE, P. J.**—Appellant Sacramento County Office of Education (Office of Education) challenges the Sacramento County Juvenile Court's order requiring it to initiate and fund the educational placement of Q.N. (the minor). Office of Education argues the court exceeded its authority, the minor failed to exhaust her administrative remedies, and the court denied Office of Education due process under the Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.). We find the juvenile court lacked jurisdiction over Office of Education and shall reverse the court's order. We remand the matter to the juvenile court to appoint a responsible adult as required by Welfare and Institutions Code section 726.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Minor*

The minor was born in the summer of 1996, the eldest of four children. Her mother lived on the streets and used drugs for many years. Her father is absent.

Cynthia M. obtained guardianship over the minor at around age three.[1] As the minor got older, she became more difficult to control. Cynthia removed the minor from her home, placing her with other family members.

At age 12, following years of physical abuse and general neglect, the minor was adjudged a dependent of the court under Welfare and Institutions Code section 300 in Alameda County.[2] In January 2009 the minor was adjudged a section 300 dependent of Sacramento County.

During her dependency, the minor was placed in six foster homes, the receiving home, and three group placement homes within five months. She ran away from at least one foster home. As a result, the minor's school attendance suffered.

---

[1] We are suppressing the guardian's last name to protect the minor's identity and will refer to the guardian by her first name. No disrespect is intended.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise designated.

In 2009, while the minor lived in a group home, she became angry when a home worker denied her a phone call. The minor threw desk items on the floor, smashed the phone, and threw a metal bowl at the worker.

The same day, another minor resident at the home discovered the minor had knocked her things to the floor. When the resident questioned the minor, the minor made threats. The minor picked up a pot of boiling water, acting as though she was going to throw it. The other resident left; the minor followed and chased the other resident with a knife.

*Subsequent Events*

In April 2009 the minor appeared before the Madera County Juvenile Court. The court established jurisdiction over the minor by sustaining misdemeanor allegations of terrorist threats, vandalism, and drawing a deadly weapon. (Pen. Code, §§ 422, 594, subd. (a), 417, subd. (a)(1).) The Madera court determined the minor's legal county of residence was Sacramento County and that she was a dependent of that county. The Madera court ordered the matter transferred to Sacramento County for final disposition.

In May 2009 the Sacramento County Juvenile Court accepted the transfer and ordered the probation department and Sacramento County Department of Health and Human Services to prepare a section 241.1 joint assessment to determine whether the minor should be a section 300 dependent or a section 602 ward of the court. The court found there "is not a parent and/or legal guardian who's capable or available to authorize remedial care or treatment."

That same month, the minor was placed in the youth detention facility and entered a school located on the premises. Office of Education is the agency responsible for providing special education services to students enrolled at the school.

Office of Education determined the minor was eligible for services. Attempts to contact the minor's legal guardian, Cynthia, proved futile. As a result, Office of Education appointed Sue L. as the minor's "surrogate parent" pursuant to Government Code section 7579.5.[3] Sue attended individualized education program (IEP) meetings, representing the minor's educational interests.

---

[3] For the reasons expressed *ante*, footnote 1, we will refer to the surrogate parent by her first name.

Office of Education prepared an academic and health assessment of the minor in June 2009. On June 17, 2009, Office of Education held an IEP meeting for the minor. The IEP team determined the minor was eligible for special education services as a student with a learning disability. The minor began receiving special education services.

On June 25, 2009, the court received the IEP and continued the section 241.1 hearing to consider further options. On September 11, 2009, the minor was adjudged a ward of the court and her dependency status was terminated. The court continued suspension of the right of the minor's mother to make educational decisions, but continued guardian Cynthia's right to make them.

The court ordered the minor to serve 127 days in the detention facility and gave her 127 days' credit for time served. Upon completion of the commitment, the minor was committed to the care, custody, and supervision of the probation department for a suitable "Level 'A' " placement.

Between September 2009 and February 2010 the court held 11 periodic review hearings to determine why the minor remained in juvenile hall and had not yet been placed in a Level "A" placement as ordered. The five-month delay resulted from the probation department's difficulty in locating an appropriate mental health placement. The minor's IEP determined she was learning delayed but not emotionally disturbed. In addition, the minor required a non-public-school setting that could provide mental health services.

In October 2009, at the request of the probation department, Office of Education developed an addendum IEP with a referral for mental health services. The Sacramento County Department of Health and Human Services, Division of Mental Health (Mental Health) assessed the minor. Following the assessment by Mental Health, the IEP team determined the minor was emotionally disturbed and qualified for mental health services. The IEP team agreed to meet in order to identify a responsible school district.

Office of Education scheduled a followup IEP meeting for February 24, 2010. At the request of the minor's public defender, Elk Grove Unified School District, Cynthia's prior district of residence; Sacramento City Unified School District; and Vallejo City Unified School District, the minor's current district of residence, were invited to attend. However, none of the districts attended the meeting.

At the meeting, Mental Health recommended residential placement and other services. However, confusion remained regarding which school district would be the minor's district of residence when she left the detention facility. Mental Health was unable to identify a responsible school district to handle the educational portion of the placement. Vallejo City Unified School District notified Office of Education that if Cynthia, who resided within the district, retained guardianship over the minor, it would take responsibility for the minor's educational placement after her release from the facility.

*Juvenile Court Proceedings*

The court held a hearing on February 25, 2010. A case management worker told the court that a school district must be identified for the minor in order for her to qualify for Government Code chapter 26.5 services. Office of Education and several other education and public agencies appeared. The court informed the attending agencies that the minor's public defender would be filing a motion for joinder of the agencies to determine the education agency responsible for the minor's placement. The court also suspended Cynthia's guardianship and right to make educational decisions pending review.

The minor's public defender filed a motion for joinder of seven agencies, including Office of Education, on March 3, 2010, under section 727 of the Welfare and Institutions Code. The purpose of the motion was to assist the court in determining which school district was responsible to provide services "pursuant to Chapter 26.5 of the Government Code."

On March 9, 2010, the court terminated Cynthia's guardianship of the minor. The court also terminated the right of the minor's biological mother to make educational decisions.

The court held a hearing on the joinder motion on March 16, 2010. Office of Education requested leave to file supplemental briefing in response to questions posed by the court.

Prior to continuing the hearing, the court outlined the minor's plight: "I'm going to operate under the assumption that no one here really wants to see [the minor] in custody under these circumstances, but I understand the parties' position. And it is the case that they have certain interests that they need to protect and I understand those interests and I understand in this time of dwindling resources, and I'm not going to put her somewhere and seek to trample on any district's rights or any entity's rights. We're going to do it the right way. . . . But I'm definitely going to rule in this case with an eye towards protecting the interests of [the minor], but I think everyone agrees,

and I appreciate the work that [Office of Education] and the [California] Department [of Education] has done up to this point for [the minor]. I think they've done a fabulous job in seeing to the needs of the minor up to this point. It's not as though she's sitting in our custody wallowing. I think we're all trying with her, but here's a kid who's been let down by every responsible adult in her life, and right now she's at a cross hairs [*sic*] . . . because she has bonded with me. She wants me to help her out. And so I'm going to do what I need to do to make that a reality, but I'm not going to trample on anybody's rights and I'm going to make sure we do this the right way."

The court reconvened the hearing on the joinder motion on April 1, 2010. The court found no basis for joining Office of Education or the other agencies and denied the minor's joinder motion. According to the court, "there is no basis to find the agencies have failed to meet their legal obligation to provide services to the minor, which is a prerequisite to an order of joinder under . . . section 727." In response to the minor's request for joinder based on future lack of action on the part of Office of Education, the court found "[t]he belief that an agency may, at some time in the future, fail to meet such a legal obligation is not grounds to join it in the instant juvenile proceedings."

In addition, the court determined that Office of Education "is responsible for providing the minor with a free and appropriate education until the minor is released from juvenile hall and placed in a residential treatment center. As the agency currently charged with providing the minor a free and public education, this Court does have the jurisdiction to direct [Office of Education] to continue to implement the minor's IEP by coordinating the transportation and funding of the minor's placement subject to reimbursement once the responsible local agency is determined.

"If, after placement, the minor remains parentless, then the minor can file a due process complaint with the Office of Administrative Hearing[s] to resolve the question of which local education agency is responsible for funding the minor's placement at a residential treatment center.

"In the alternative, [Office of Education] can actually seek reimbursement from the other public agencies using the appropriate legal procedures available to it."

Office of Education argued that, as a court of limited jurisdiction, the juvenile court lacked the authority to determine which agency was responsible for providing special education services to the minor. The court rejected the argument, finding "the present controversy of which agency is responsible for the minor upon her transfer to a residential treatment center is not ripe for administrative review. Therefore, the juvenile court does have the authority to

identify the agency presently responsible for arranging and funding the minor's transfer to a residential treatment program."

The court could not appoint a responsible adult under section 726 because the surrogate parent made representations that she did not want to be appointed by the court as the responsible adult, and no other person had been considered to serve as the minor's responsible adult. As a result, the court directed Office of Education to appoint a surrogate parent and file a mandatory Judicial Council form JV-536.

At a subsequent hearing, the court modified the order and appointed independent education counsel to represent the minor. Office of Education filed a timely notice of appeal.

## DISCUSSION

*Office of Education's Standing to Appeal*

At the outset, the minor argues Office of Education's appeal must be dismissed because the court's order is not appealable. According to the minor, appeals from judgments and decrees of a juvenile court are governed by section 800, which does not provide for any appeal by an agency such as Office of Education.

Section 800 states, in part: "(a) A judgment in a proceeding under Section 601 or 602 may be appealed from, by the minor, in the same manner as any final judgment, and any subsequent order may be appealed from, by the minor, as from an order after judgment. . . . [¶] . . . [¶]

"(b) An appeal may be taken by the people from any of the following:

"(1) A ruling on a motion to suppress . . . .

"(2) An order made after judgment . . . .

"(3) An order modifying the jurisdictional finding . . . .

"(4) An order or judgment dismissing or otherwise terminating the action before the minor has been placed in jeopardy, or . . . has waived jeopardy. . . .

"(5) The imposition of an unlawful order at a dispositional hearing . . . ."

The minor argues that under section 800, *only* the minor and the People have standing to appeal from a judgment resulting from a section 602 proceeding.[4] Since section 800 does not expressly provide any additional parties may appeal, Office of Education's appeal must be dismissed.

In support, the minor relies on *In re Almalik S.* (1998) 68 Cal.App.4th 851 [80 Cal.Rptr.2d 619] (*Almalik S.*), in which the appellate court dismissed the appeal by a minor's mother after the court declared the minor a ward of the court and placed the minor on probation in the mother's home. (*Id.* at pp. 852–853.) The court determined it lacked authority to hear the mother's appeal.

The *Almalik S.* court stated: "The right to appeal is statutory and a judgment or order is not appealable unless expressly made so by statute. [Citation.] The orders and judgments in juvenile delinquency matters which are appealable are restricted to those set forth in Welfare and Institutions Code section 800. [Citation.] Code of Civil Procedure section 902, providing for a right to appeal by '[a]ny party aggrieved,' has no applicability to juvenile delinquency matters. '[T]he appealability of juvenile court orders is governed,

---

[4] Section 602 provides: "(a) Except as provided in subdivision (b), any person who is under the age of 18 years when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court.

"(b) Any person who is alleged, when he or she was 14 years of age or older, to have committed one of the following offenses shall be prosecuted under the general law in a court of criminal jurisdiction:

"(1) Murder, as described in Section 187 of the Penal Code, if one of the circumstances enumerated in subdivision (a) of Section 190.2 of the Penal Code is alleged by the prosecutor, and the prosecutor alleges that the minor personally killed the victim.

"(2) The following sex offenses, if the prosecutor alleges that the minor personally committed the offense, and if the prosecutor alleges one of the circumstances enumerated in the One Strike law, subdivision (d) or (e) of Section 667.61 of the Penal Code, applies:

"(A) Rape, as described in paragraph (2) of subdivision (a) of Section 261 of the Penal Code.

"(B) Spousal rape, as described in paragraph (1) of subdivision (a) of Section 262 of the Penal Code.

"(C) Forcible sex offenses in concert with another, as described in Section 264.1 of the Penal Code.

"(D) Forcible lewd and lascivious acts on a child under the age of 14 years, as described in subdivision (b) of Section 288 of the Penal Code.

"(E) Forcible sexual penetration, as described in subdivision (a) of Section 289 of the Penal Code.

"(F) Sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code, by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.

"(G) Lewd and lascivious acts on a child under the age of 14 years, as defined in subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066 of the Penal Code."

not by the Code of Civil Procedure, but by the Welfare and Institutions Code.' [Citation.]" (*Almalik S., supra,* 68 Cal.App.4th at p. 854.)

However, the court reached a contrary result in *In re Jeffrey M.* (2006) 141 Cal.App.4th 1017 [46 Cal.Rptr.3d 533] (*Jeffrey M.*). In *Jeffrey M.,* the mother of a minor found jointly and severally liable for payment of restitution to a victim could appeal the juvenile court's order. (*Id.* at pp. 1020–1021.) The court found: "Although [Welfare and Institutions Code] section 800 does not expressly afford a minor's parent the right to appeal a judgment or order of the juvenile court made in a [Welfare and Institutions Code] section 601 or 602 proceeding, a parent has the authority to appeal to protect his or her own interests. [Citations.] Also, [Welfare and Institutions Code] section 730.7 expressly authorizes the juvenile court to make the mother jointly and severally liable for the restitution ordered pursuant to Civil Code section 1714.1. Judgments obtained pursuant to Civil Code section 1714.1 are reviewable on appeal." (*Jeffrey M.,* at p. 1021.)

Similarly, in *In re Michael S.* (2007) 147 Cal.App.4th 1443 [54 Cal.Rptr.3d 920] (*Michael S.*), the court found section 800 does not prevent a parent from appealing a restitution order. According to the court, nothing in section 800 prevents a party affected by a juvenile court ruling from appealing "under some *other* statute where an appeal would otherwise be appropriate." (*Michael S.,* at p. 1449.)

■ Here, Office of Education is directly affected by the court's order, as were the parents in *Jeffrey M.* and *Michael S.* The court's order making Office of Education responsible for the minor's education placement is a final determination of the rights of the parties in this matter. An order that constitutes the final determination in a proceeding is appealable. (Code Civ. Proc., § 904.1, subd. (a); *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583 [120 Cal.Rptr.2d 213].)

As Office of Education notes, the order does not contemplate any further court action on the issue; the order is final and appealable by Office of Education.

*Authority of Court to Issue Order*

Office of Education agrees with the court's denial of the minor's motion for joinder and contends that since it was not joined, the court lacked the authority to issue an order against it. The parties agree we review the issue de novo.

Section 727 governs joinder in juvenile proceedings and states, in pertinent part: "(a) . . . To facilitate coordination and cooperation among governmental agencies, the court may, after giving notice and an opportunity to be heard, join in the juvenile court proceedings any agency that the court determines has failed to meet a legal obligation to provide services to the minor. . . . In any proceeding in which an agency is joined, the court shall not impose duties upon the agency beyond those mandated by law. Nothing in this section shall prohibit agencies which have received notice of the hearing on joinder from meeting prior to the hearing to coordinate services for the minor.

"The court has no authority to order services unless it has been determined through the administrative process of an agency that has been joined as a party, that the minor is eligible for those services. With respect to mental health assessment, treatment, and case management services pursuant to [Government Code] Chapter 26.5 . . . the court's determination shall be limited to whether the agency has complied with that chapter."

According to Office of Education, by denying the minor's motion for joinder, the court ruled there was no basis for joining the office to the court proceedings. Therefore, the court lacked the authority to issue an order against it.

During oral argument in juvenile court, Office of Education argued that, as a court of limited jurisdiction, the juvenile court lacked the authority to determine which agency is responsible for providing special education services to the minor. The court rejected the argument, noting the minor's eligibility status had been determined and she had been receiving educational services in juvenile hall.

The court concluded Office of Education, "by admission, is the responsible agency to provide her those services, at least while she is in juvenile hall." In issuing its order, the court further found Office of Education "is responsible for providing minor with a free, appropriate, public education while the minor remains housed at juvenile hall. As the agency currently charged with providing the minor with a free, appropriate, public education, the juvenile court has the jurisdiction to direct [Office of Education] to continue to implement the minor's IEP."

However, the minor filed her motion of joinder against Office of Education and several other agencies in an effort to determine which agency was responsible for her out-of-county placement. By requesting joinder, the minor sought to bring the agencies, including Office of Education, under the juvenile court's jurisdiction to enable the court to determine the responsible agency.

■ As noted, under section 727 an agency may be joined in a juvenile court proceeding if the court determines it "has failed to meet a legal obligation to provide services to the minor." (§ 727, subd. (a).) Joinder of an agency is improper when the motion fails to allege an agency has violated any obligation to provide the minor with services, and there was no evidence of any such violation before the court. (*Southard v. Superior Court* (2000) 82 Cal.App.4th 729, 734 [98 Cal.Rptr.2d 733].)

Here, the juvenile court in denying the minor's motion for joinder found Office of Education had not failed to provide any service and there was no basis for joinder under section 727. The court noted Office of Education had provided numerous special services to the minor, including assessments, finding a surrogate parent, referring her to mental health services, and holding additional IEP meetings regarding residential placement. Ultimately, the court concluded there "is no evidence that [Office of Education] has violated any legal obligation to provide services to the minor."

■ Once the juvenile court determined that Office of Education could not be joined as a party, the court also determined it had no jurisdiction to issue an order against Office of Education. When a court lacks jurisdiction, it lacks the authority to issue an order because the entity that is the subject of the order has not been made a proper party to the action. (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622 [267 Cal.Rptr. 746].)

■ Nonetheless, the court ordered Office of Education to fund the minor's placement in a residential facility. Although the court asserted it "has the jurisdiction to direct [Office of Education] to continue to implement the minor's IEP," we find no legal basis for this jurisdiction in the face of the court's denial of the minor's joinder motion. Accordingly, we reverse the juvenile court's order of April 1, 2010, requiring Office of Education to fund the minor's residential facility placement.

Mindful of the needs of the minor, we note the juvenile court has the authority and responsibility to appoint a responsible adult under section 726, subdivision (b). In March 2010 the juvenile court terminated the rights of the minor's biological mother and guardian to make educational decisions for the minor. At the April 2010 hearing the court ruled that because the surrogate parent did not wish to be appointed, she could not properly represent the minor's interests. Given this void, the proper course of action would have been to appoint a responsible adult as required by section 726.

## DISPOSITION

The court's order of April 1, 2010, requiring Office of Education to fund the minor's residential placement is reversed.

Nicholson, J., and Mauro, J., concurred.