[No. D045115. Fourth Dist., Div. One. July 25, 2005.]

In re TOMMY A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
TOMMY A., Defendant and Appellant.

**1582**

### Counsel

Jackie Menaster, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Daniel Rogers, Deputy Attorney General, for Plaintiff and Respondent.

### Opinion

**NARES, J.**—This case, which involves restitution for a victim of criminal conduct by a juvenile delinquent, arose in May 2003 when then 16-year-old Tommy A., while driving a car belonging to Maribel Cardenas, one of his mother's friends, without a driver's license or permission, accidentally rear-ended the victim's car and fled the scene. Cardenas's insurance carrier fully paid the victim under a settlement agreement for her economic losses, which totaled $5,126.76. The victim signed a release of liability that expressly released Tommy of liability for "all claims, demands and causes of action" the victim might have against him for the recovery of "damages" for "injuries, losses and damages of whatever nature" that she had sustained as a result of the car accident.

Thereafter, in a juvenile delinquency proceeding, Tommy admitted a charge of misdemeanor hit and run resulting in property damage. (Veh. Code, § 20002, subd. (a).) The juvenile court placed Tommy on probation. (Welf. & Inst. Code, § 602.) As a condition of probation, the court ordered him to pay victim restitution in the amount of $5,126.76 under Welfare and Institutions Code[1] section 730.6, subdivision (a)(1) (section 730.6(a)(1)), which provides that a victim who has suffered "any economic loss" as a result of a juvenile delinquent's criminal conduct "shall receive restitution *directly from* that minor." (Italics added.)

Tommy appeals, contending the victim restitution order should be reversed because (1) the settlement payment by Cardenas's insurer to the victim, which fully compensated her for her economic losses, was made on Tommy's behalf; (2) the release of liability signed by the victim fulfilled any requirement that Tommy pay restitution; and thus (3) restitution was barred as the insurer's payment to the victim fully offset Tommy's direct victim restitution obligation.

For reasons we shall discuss, we decide in our central holding that because the settlement payment by Cardenas's insurer to the victim is a payment from a source that is completely distinct and independent from Tommy, it does not constitute "restitution directly from" Tommy within the meaning of section 730.6(a)(1), and thus does not relieve him of his victim restitution obligation under that statute. Accordingly, we affirm the restitution order.

### FACTUAL BACKGROUND

In late May 2003, Tommy, an unlicensed minor then 16 years of age, took a car belonging to his mother's friend, Cardenas, without her permission. As he was driving to visit his girlfriend, he rear-ended a car being driven by Sara Hennessy (Hennessy or the victim). Hennessy exited her car, approached the window of the car Tommy was driving and told him she would contact the police.

Tommy was scared and fled the scene because he did not want to get into trouble for driving Cardenas's car without a license and her permission. Hennessy suffered injuries to her neck, back, shoulders, forearms and knees as a result of the accident. After Tommy fled the scene, Hennessy went to the Chula Vista Police Department and reported the hit-and-run collision. She also received medical care for her injuries.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

The police department sent out a warning letter to Cardenas, the registered owner of the car that rear-ended Hennessy's car. Cardenas responded to the police quickly and cooperatively. She informed the police that she had not been involved in the accident and that she thought Tommy had been driving her car based on the description of the suspect that Hennessy gave. During questioning, Tommy admitted he took Cardenas's car without her permission, rear-ended another car, and fled the scene.

As a result of the accident, Hennessy's economic losses consisted of medical bills in the amount of $5,126.76. In settlement of Hennessy's tort claims in this matter, Cardenas's insurance carrier paid Hennessy the sum of $8,500, which indemnified her for all of her economic losses. In late July 2004, Hennessy signed a release of liability that expressly released both Tommy and Cardenas of liability for Hennessy's "claims, demands and causes of action" against them for the recovery of "damages" for "injuries, losses and damages of whatever nature" that she had sustained as a result of the collision.

## PROCEDURAL BACKGROUND

According to his probation officer's social study in this case, Tommy's delinquency began in April of 2002 when he was involved in a fight. Tommy knocked the victim to the ground, continued to hit him, and kicked him in the face. The victim, whose two bottom front teeth were knocked out and who suffered other facial injuries, was taken to the emergency room. Tommy was granted deferred entry of judgment, put on probation, and ordered to pay victim restitution in the amount of $6,227 and have no association with any gang members.

Tommy was involved in another violent altercation in December of 2002. According to police reports, Tommy robbed the victim of his backpack and hit him in the face and the back of the head. For this offense, Tommy was declared a ward of the juvenile court and was ordered to attend assaultive behavior classes and counseling. In March of 2003, Tommy successfully completed his probation.

In the instant case, which arose only two months later in May 2003, the San Diego County District Attorney charged Tommy in a juvenile delinquency petition with misdemeanor hit and run resulting in injury to another (count 1, Veh. Code, § 20001, subd. (a)) and driving without a license (count 2, Veh. Code, § 12500, subd. (a)).

As part of a plea bargain, Tommy admitted the lesser included offense in count 1 of misdemeanor hit and run resulting in property damage only (Veh. Code, § 20002 subdivision (a)). The juvenile court sustained the petition as to the lesser included offense and dismissed the remaining petition allegations.

At the June 2004 disposition hearing, the juvenile court declared Tommy a ward; granted him probation and committed him to the care, custody and control of the probation officer; and placed him with his mother. As a condition of probation, the juvenile court ordered Tommy to pay restitution in an amount to be determined by further order of the court.

At a restitution status review hearing in July 2004, the probation officer submitted a memorandum stating that the victim was requesting restitution in the amount of $5,126.76 for her medical expenses, plus $15,380.28 for pain and suffering. As the parties were unable to reach an agreement as to the appropriate restitution amount, the court set the matter for an evidentiary hearing to be held on a specified date in August 2004. Before that hearing was held, Hennessy entered into a settlement agreement, accepted the $8,500 payment from Cardenas's insurer, and signed the release of liability that is the subject of this appeal.

*Evidentiary Hearing and Restitution Order*

At the August 2004 evidentiary hearing, the court considered points and authorities submitted by the People and heard the parties' oral arguments regarding Tommy's restitution obligation. The court indicated that one of the issues to be addressed was the effect of Cardenas's insurer's $8,500 settlement payment to Hennessy on Tommy's restitution obligation.

The People argued that Tommy should pay victim restitution in the amount of $5,126.76 for the medical expenses that Hennessy incurred as a result of the accident, notwithstanding Hennessy's insurance settlement, because (1) restitution would serve to rehabilitate Tommy by helping him to understand the impact of his crimes; (2) a release of liability by the victim cannot waive the People's right to have the minor pay restitution as part of his disposition; and (3) the $8,500 payment by Cardenas's insurance company should not offset the minor's restitution obligation because Tommy did not procure the insurance policy and he should not benefit from the fortuitous event that Cardenas's policy covered Tommy's illegal acts.

The defense claimed that victim restitution is supposed to be rehabilitative, not punitive in nature, and an order requiring Tommy to pay victim restitution in the amount of $5,126.76 would result in a windfall for Hennessy because she had received an insurance payment in the amount of $8,500 and thus had been fully compensated for her damages. Tommy's counsel expressed concern about the possibility that Cardenas's insurance company might seek reimbursement from Tommy and his mother for the amount it paid to Hennessy.

After taking the matter under submission, the juvenile court issued a minute order (the restitution order) requiring Tommy to pay victim restitution to Hennessy in the amount of $5,126.76 "subject to modification during the term of probation." The court found that (1) the settlement payment by Cardenas's insurance company covered Hennessy's economic losses; (2) the People were not a party to the settlement or the release of liability; (3) the insurance carrier that paid the settlement was the insurance carrier for the owner of the car that Tommy drove (Cardenas), not an insurer for Tommy, Tommy's mother, or anyone legally responsible for him; (4) Tommy did not pay any portion of the insurance premiums; (5) the insurance settlement did not offset Tommy's obligation to pay restitution; and (6) requiring Tommy to compensate Hennessy for losses she suffered as a result of his conduct would "reinforce in [Tommy] the principle of accountability for one's conduct and [was] reasonably likely to aid in his reformation." The order also indicated that in the event Cardenas's insurance carrier seeks repayment from Tommy such that he might face liability for twice the amount of Hennessy's economic losses, Tommy "may seek further court order by making a noticed motion to address those circumstances."

## STANDARD OF REVIEW

■ "The interpretation of a statute presents a question of law which is subject to de novo review on appeal. [Citation.]" (*Mamika v. Barca* (1998) 68 Cal.App.4th 487, 491 [80 Cal.Rptr.2d 175].) Here, as the facts are not in dispute and Tommy's appeal involves interpretation of section 730.6(a)(1), our review is de novo.

## DISCUSSION

Tommy contends this court should reverse the juvenile court's restitution order because (1) Hennessy accepted full payment for her economic damages from Cardenas's insurance company, (2) Hennessy signed a release specifically and fully releasing him from liability, and (3) restitution was thus barred because the insurance company's payment was on his behalf. We reject this contention.

A. *Applicable Legal Principles*

Citing article I, section 28, subdivision (b) of the California Constitution,[2] the California Supreme Court in *People v. Crow* (1993) 6 Cal.4th 952, 956 [26 Cal.Rptr.2d 1, 864 P.2d 80], explained that "[i]n 1982, by initiative, the voters of California added a provision to the state Constitution establishing a new constitutional right: the right of every crime victim to obtain restitution from the perpetrator of the crime for losses suffered." This constitutional provision directed the Legislature to enact implementing legislation. (*Ibid.*)

■ Section 730.6 is one of the implementing statutes. (See Historical and Statutory Notes, 73A West's Ann. Welf. & Inst. Code (1998 ed.) foll. § 730.6, p. 323; see also *People v. Birkett* (1999) 21 Cal.4th 226, 230 & 241, fn. 16 [87 Cal.Rptr.2d 205, 980 P.2d 912].) Section 730.6 "governs restitution in cases where a minor is adjudicated a ward of the court pursuant to section 602." (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1131 [123 Cal.Rptr.2d 316].)

Section 730.6(a)(1), the victim restitution statute at issue in this appeal, provides: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct *shall* receive restitution *directly from that minor.*" (Italics added.) Citing section 730.6(a)(1), the Court of Appeal in *In re Brian N.* (2004) 120 Cal.App.4th 591, 593 [15 Cal.Rptr.3d 337], disapproved on another point in *People v. Martinez* (2005) 36 Cal.4th 384 [30 Cal.Rptr.3d 779, 115 P.3d 62], explained that "[w]hen a minor is adjudged a ward of the court, the juvenile court must order restitution to reimburse a victim for 'any economic loss' resulting from the minor's conduct bringing him within the court's jurisdiction."

Under section 730, subdivision (b), the juvenile court has broad discretionary power to impose terms and conditions of probation to achieve justice and enhance the reformation and rehabilitation of a ward.[3] "The juvenile court is

---

[2] Article 1, section 28, subdivision (b) of the state Constitution provides in part: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity *shall* have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution *shall* be ordered from the convicted persons in *every* case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Italics added.)

[3] Section 730, subdivision (b) provides in part: "The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

vested with discretion to order restitution in a manner that will further the legislative objectives of making the victim whole, rehabilitating the minor, and deterring future delinquent behavior. [Citations.]" (*In re Brian N., supra,* 120 Cal.App.4th at p. 594, 15 Cal.Rptr.3d 337.)

### B. *Analysis*

In support of his claim that restitution was barred, Tommy relies on *People v. Bernal* (2002) 101 Cal.App.4th 155, 161–162 [123 Cal.Rptr.2d 622] (*Bernal*). He also relies on *Bernal* for the proposition that "the primary goal of restitution is to fully reimburse the victim, rather than rehabilitation or deterrence." Tommy's reliance on *Bernal* is misplaced.

*Bernal* involved an adult defendant (Bernal) who was granted probation after pleading guilty to driving under the influence of alcohol and causing great bodily injury. (*Bernal, supra,* 101 Cal.App.4th at p. 158.) As a condition of probation, the trial court ordered Bernal to pay restitution to the victim under former Penal Code section 1202.4, which, as the *Bernal* court explained, "mandated that a crime victim receive 'full restitution' ([Pen. Code,] § 1202.4, subd. (f)) 'directly from' the defendant ([Pen. Code,] § 1202.4, subd. (a)(1))[4] without regard to 'the indemnification or subrogation rights of any third party' ([Pen. Code,] § 1202.4, subd. (f)(2))." (*Bernal, supra,* 101 Cal.App.4th at p. 161.) After Bernal's insurance company made a settlement payment to the victim, who executed a release naming him, Bernal brought a motion for an order determining that his restitution obligation had been satisfied. (*Id.* at p. 158.) The trial court issued a restitution modification order based upon the release, finding that Bernal's insurer's payment to the victim satisfied Bernal's restitution obligation. (*Id.* at pp. 158, 160.) The People appealed the order. (*Id.* at p. 158.)

The Court of Appeal in *Bernal* reversed the restitution modification order, holding that the trial court erred in determining that the victim's written release satisfied defendant's restitution obligation. (*Bernal, supra,* 101 Cal.App.4th at p. 164.) The *Bernal* court also held that the payment made by Bernal's insurer to settle the victim's civil claim for damages qualified as a payment "directly from" Bernal under the applicable victim restitution statute

---

[4] Penal Code section 1202.4, subdivision (a)(1), like the victim restitution statute at issue in this appeal (Welf. & Inst. Code, § 730.6(a)(1)), still mandates that a crime victim receive restitution "directly from" the offender. (See fn. 5, *post.*)

(Pen. Code, § 1202.4, subd. (a)(1); see fn. 5, *post*), and thus the payment must be an offset to his victim restitution obligation for losses covered by the restitution order. (*Bernal, supra,* 101 Cal.App.4th at pp. 167–168.)

Citing *People v. Crow, supra,* 6 Cal.4th 952, the *Bernal* court explained that "[a] restitution order has objectives beyond simply indemnifying the victim. It also seeks to *rehabilitate the defendant and deter* defendant and others." (*Bernal, supra,* 101 Cal.App.4th at pp. 161–162, italics added.)

The *Bernal* court also explained that a restitution order based upon a defendant's plea is "an agreement between the defendant and the state" (*Bernal, supra,* 101 Cal.App.4th at p. 162), and thus a release of liability executed by a victim, who is not a party to that agreement, cannot relieve the defendant of his restitution obligation: "While a settlement agreement with, and release of, a defendant's insurance company may reflect a victim's willingness to accept the amount paid in full satisfaction for all civil liability, it does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society. A restitution order pursuant to a defendant's plea is an agreement between the defendant and the state. [Citation.] The victim is not party to the agreement, and a release by the victim cannot act to release a defendant from his financial debt to the state any more than it could terminate his prison sentence." (*Ibid.*)

In holding that a restitution payment "directly from" the defendant within the meaning of Penal Code section 1202.4, subdivision (a)(1) includes payments by a defendant's own insurer, the *Bernal* court reasoned that such an insurer, unlike "other sources of victim reimbursement," is contractually obligated upon request by the defendant to assist in making restitution payments to the victim because the defendant procured, and paid the premiums for, the insurance, and the defendant's insurance company has no right of indemnity or subrogation against the defendant. (*Bernal, supra,* 101 Cal.App.4th at pp. 167–168.)

The *Bernal* court used the phrase "completely distinct and independent from the defendant[]" (*Bernal, supra,* 101 Cal.App.4th at p. 166) (hereafter the *Bernal* test) to describe a source of victim reimbursement whose payments to the victim may not be offset against the defendant's victim restitution obligation. (*Id.* at pp. 166 & 168; see also *People v. Hamilton* (2003) 114 Cal.App.4th 932, 941 [8 Cal.Rptr.3d 190] (*Hamilton*) [stating that *Bernal*, in holding that payments by the defendant's insurer to settle the

victim's civil action against the defendant must be offset against the defendant's victim restitution obligation, distinguished cases "involving sources of victim reimbursement that were 'completely distinct and independent from the defendants' "].)

Tommy's reliance on *Bernal* is misplaced for three reasons. First, in this case, unlike in *Bernal*, the settlement payment to the victim was from a source that was "completely distinct and independent" from the offender within the meaning of the *Bernal* test, and thus the payment did not qualify as "restitution directly from [the] minor" within the meaning of section 730.6(a)(1).[5] Here, it is undisputed that the settlement payment to the victim, Hennessy, was made by the insurer for Cardenas, the owner of the car that Tommy was unlawfully driving at the time of the collision. It is also undisputed that neither Tommy, nor his mother or any other person legally responsible for his care and support, procured Cardenas's insurance or paid the premiums for that insurance.[6] In light of the undisputed facts presented here, we conclude that because Cardenas's insurer's settlement payment to Hennessy was a payment made by a source that was completely distinct and independent from Tommy, the payment was not made on his behalf for purposes of section 730.6(a)(1) and cannot be offset against Tommy's restitution obligation as a matter of law. (See *Bernal, supra,* 101 Cal.App.4th at p. 166.)

█ Second, to paraphrase *Bernal*, "[a] restitution order [under section 730.6(a)(1)] pursuant to a [juvenile offender's admission] is an agreement between [the juvenile offender] and the state," and thus a release of liability

---

[5] As already discussed, *Bernal* involved Penal Code section 1202.4, subdivison (a)(1), which currently provides: "It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime *shall* receive restitution *directly from* any defendant convicted of that crime." (Italics added.) This victim restitution statute, which applies to *adult* offenders like the defendant in *Bernal, supra,* 101 Cal.App.4th 155 (see *People v. Birkett, supra,* 21 Cal.4th at p. 241, fn. 16), parallels Welfare and Institutions Code section 730.6(a)(1), the mandatory restitution statute at issue here that applies to *juvenile* offenders like Tommy. In the interest of illustrating the similarity of the language contained in these two victim restitution statutes, we again note that section 730.6(a)(1) provides: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct *shall* receive restitution *directly from* that minor." (Italics added.) Both statutes mandate that the crime victim receive restitution for his or her economic losses "directly from" the offender.

[6] We need not, and do not, address the issue of whether a settlement payment made to a victim *by an insurer of a juvenile delinquent's parent, guardian, or other person legally responsible for the juvenile's care and support,* would qualify as "restitution directly from [the] minor" within the meaning of section 730.6(a)(1). We reserve a determination of that question until it is raised in an appropriate case.

by the victim, who is not a party to the agreement, "cannot act to release [the juvenile] from his financial debt to the state" as a matter of law. (*Bernal, supra,* 101 Cal.App.4th at p. 162.) Stated differently, a release of liability executed by a juvenile offender's victim and purporting to release that juvenile from all claims the victim might have against him or her is separate and apart from the implied agreement between the juvenile offender and the state that is created when the juvenile court, based on the juvenile's admission of allegations set forth in a juvenile delinquency petition, orders the juvenile to pay victim restitution under section 730.6(a)(1). (See *Bernal, supra,* 101 Cal.App.4th at p. 162.) Under that implied agreement, the juvenile offender is obligated to satisfy a "rehabilitative and deterrent debt to society" (*ibid.*) by paying restitution compensating the victim for the economic losses she suffered as a result of the juvenile's criminal conduct. Because the victim is not a party to that implied agreement, she cannot release the juvenile offender from a court-ordered victim restitution obligation mandated by section 730.6(a)(1) and article 1, section 28, subdivision (b) of the California Constitution by executing a release of liability. *Bernal* thus supports the restitution order in this matter notwithstanding the release of liability that Hennessy executed.

Third, Tommy fails to acknowledge the importance of the rehabilitative and deterrent goals of restitution discussed in *Bernal, supra,* 101 Cal.App.4th at pages 161–162. In sum, Tommy's reliance on *Bernal* is unavailing.

*Hamilton, supra,* 114 Cal.App.4th 932, also supports our conclusion. In *Hamilton,* the adult defendant (Hamilton) shot the victim, who had been working for Hamilton's mother. After pleading no contest to assault with a firearm, Hamilton was placed on probation. As a condition of probation, the trial court ordered him to pay victim restitution. (*Id.* at p. 935.) The victim brought a civil action against Hamilton and his mother seeking damages for his injuries. (*Ibid.*) Hamilton's mother's insurance company made a payment to the victim to settle the claim on her behalf and obtained the victim's release of claims and dismissal with prejudice of his lawsuit against Hamilton and his mother. (*Ibid.*)

Distinguishing *Bernal, supra,* 101 Cal.App.4th 155, the *Hamilton* court held that the settlement payment by Hamilton's mother's insurance carrier could not offset Hamilton's victim restitution obligation under Penal Code

section 1202.4 (see fn. 4, *ante*) because, under the *Bernal* test (discussed, *ante*), the payment was made "by a source completely distinct and independent from Hamilton." (*Hamilton, supra,* 114 Cal.App.4th at p. 942.) The *Hamilton* court reasoned that unlike the defendant in *Bernal*, Hamilton "did not procure or maintain the insurance, had no contractual right to require payments to be made on his behalf, and was potentially subject to an indemnity claim by the insurer." (*Hamilton, supra,* at p. 942, fn. omitted.)

Here, as already discussed, neither Tommy nor anyone legally responsible for his care or support (see fn. 6, *ante*) procured or maintained the insurance that covered the economic losses that Hennessy sustained as a result of Tommy's criminal conduct. Thus, under *Hamilton, supra,* 114 Cal.App.4th 932, and the *Bernal* test, Tommy cannot use the settlement payment made by Cardenas's insurer to offset his victim restitution obligation under section 730.6(a)(1).

 For all of the foregoing reasons, we hold that because the settlement payment by Cardenas's insurer to the victim is a payment from a source that is completely distinct and independent from Tommy, the payment does not constitute "restitution directly from" Tommy within the meaning of section 730.6(a)(1), and thus it does not relieve him of his victim restitution obligation under that statute. We also conclude that the release of liability signed by Hennessy does not relieve Tommy of his section 730.6(a)(1) restitution obligation because (1) the state's legitimate interest in rehabilitating Tommy and in deterring him and others from engaging in future criminality is independent of the victim's private interest in compensation for her economic losses; (2) the restitution order, which is based on Tommy's admission that he committed a lesser included offense in count 1 of the juvenile delinquency petition, created an implied agreement between Tommy and the state obligating Tommy to satisfy a "rehabilitative and deterrent debt to society" (*Bernal, supra,* 101 Cal.App.4th at p. 162) by paying restitution compensating Hennessy for the economic losses she suffered as a result of his criminal conduct; and (3) because Hennessy is not a party to that implied agreement, she cannot release Tommy from the court-ordered victim restitution obligation mandated by section 730.6(a)(1) and article 1, section 28, subdivision (b) of the California Constitution by executing a release of liability as a matter of law.

## DISPOSITION

The restitution order is affirmed.

McConnell, P. J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 30, 2005. Kennard, J., was of the opinion that the petition should be granted.