Filed 4/5/13  In re K.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E056026 |
| Plaintiff and Appellant, | (Super.Ct.No. J239207) |
| v. | OPINION |
| K.G., | |
| Defendant and Respondent. | |
| In re W.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | |
| Plaintiff and Appellant, | E056028 |
| v. | (Super.Ct.No. J239208) |
| W.W., | |
| Defendant and Respondent. | |

1

APPEAL from the Superior Court of San Bernardino County.  Larry W. Allen,

Judge.  Affirmed.

Michael A. Ramos, District Attorney, and Brent J. Schultze, Deputy District

Attorney, for Plaintiff and Appellant.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and

Respondent K.G.

Mark Yanis under appointment by the Court of Appeal, for Defendant and

Respondent W.W.

A juvenile wardship petition was filed alleging that defendant and appellant K.G.[1]

committed second degree burglary (Pen. Code, § 459, counts 1, 5, & 7), received stolen

property (Pen. Code, § 496, subd. (a), count 2), committed vandalism causing over $400

in damage (Pen. Code, § 594, subd. (b)(1), counts 3 & 6), and committed arson (Pen.

Code, § 451, subd. (c), count 4).  A separate juvenile wardship petition alleged that

defendant and appellant W.W. committed second degree burglary (Pen. Code, § 459,

count 1, 3, & 5), arson (Pen. Code, § 451, subd. (c), count 2), and vandalism causing over

$400 in damage (Pen. Code, § 594, subd. (b)(1), count 4).  Both K.G. and W.W. (the

minors) admitted the allegations that they committed vandalism (Pen. Code, § 594,

subd. (b)(1)), and an added count of accessory after the fact to arson (Pen. Code, § 32).

A juvenile court dismissed the other counts, with the stipulation that the dismissed counts

---

[1] K.G. turned 18 in September 2011.  Although he is legally an adult, he is under
the continuing jurisdiction of the juvenile court.  (Welf. & Inst. Code, § 607.)  For the
sake of consistency, we will refer to him as a minor in this opinion.

could still be considered in determining restitution. The court declared the minors to be wards and placed them on probation, under the terms recommended by the probation department. The court subsequently imposed victim restitution in the amount of $25,000, with the minors and their parents jointly and severally liable.

The People now appeal from the juvenile court's order of victim restitution, contending that the court erroneously failed to order full restitution. The People claim that the court based its order of partial restitution on the minors' inability to pay, which is an improper consideration under Welfare and Institutions Code section 730.6, subdivision (h).[2] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

The police received a report that there was a large amount of white/yellow powder inside the Yermo Community Center (the community center), and that items were missing. The police discovered that the fire extinguishers had been removed from the walls, and the locked storage room had been kicked open. Two possible suspects were interviewed. One of them told the police that he and his brother discovered the door to the community center unlocked. They entered the building. The suspect said that K.G. entered the building with them and stole soda cans and a digital recorder. K.G. admitted to the probation officer that he broke into and vandalized the community center.

---

[2] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[3] Since the minors admitted the allegations, the brief factual background is taken from the probation officer's reports.

Subsequently, K.G. and W.W. told the police that they vandalized the Yermo Bible Church with paint. They said they also entered the Silver Valley Baptist Church (Silver Valley Church) with another juvenile, identified as Matt. Once inside, Matt poured liquid from a metal container onto toilet paper and then lit it on fire with matches. As the fire grew, Matt ran out the side door of the church. The minors attempted to contain the fire, but could not, so they ran out of the building to an abandoned house. They did not notify authorities.

The minors admitted the allegations that they committed vandalism (Pen. Code, § 594, subd. (b)(1)), and that they were accessories after the fact to the arson of Silver Valley Church (Pen. Code, § 32). The court declared them wards and placed them on probation.

The Silver Valley Church submitted a restitution claim to the probation department with a total of $448,816.15. The total included restitution for the church building, the contents of the church, expenses, and the depreciation costs of the church building and its contents. The probation department submitted to the court the restitution claim with a statement of loss provided by the insurance company.

The court held a restitution hearing on January 18, 2012. The parties previously had an unreported conference with the court, and the court had indicated its intention to set the maximum amount of restitution at $25,000. The prosecutor stated, "I thought it was going to be $25,000 for each kid and $25,000 for the parents," and added that there were three victims. The court responded, as follows: "Well, that's going to be joint and several on the $25,000. We didn't discuss how among the three victims we were going to

4

allocate the $25,000. That's what we didn't discuss." The court indicated that it had only received a restitution claim from Silver Valley Church, but not Yermo Bible Church or the community center. The court explained how it would apportion the $25,000 among the three victims, as follows: "What they would normally do in a civil courtroom is they would add up the three and make the percentage and just do it [percentage] wise." Counsel for K.G. said he would agree to that. The prosecutor responded, "Now that we know what we're doing, maybe we can have probation contact and see—now that [counsel for K.G.] and [counsel for W.W.] and I have come to an agreement, all it is is getting numbers, maybe probation could do that." The court stated that the parties would have to return for another attorneys only hearing. It noted that the Silver Valley Church's restitution claim was in excess of $400,000, which the prosecutor confirmed. The court then stated: "And there would be some amount for the Yermo church and some amount for the community center. We don't seem to have those exact amounts. But probably it's all going to come close to half a million dollars. In reviewing the law in this matter, it's clear that generally we're supposed to order the full amount of the damage. [¶] Now, in this case it's further complicated by the fact that they plead to accessory. And in accessories they have to have a certain factual connection, which we haven't had a hearing on. But the court just looking at the amount and the family background of these two minors, it does not appear to the court that there is any hope that they could ever pay the kind of money we're talking about . . . . [¶] The law does provide that the court can set the full amount of the restitution, and then for unusual and extraordinary circumstances stated on the record order a lesser amount. And the court's inclination in

5

this matter is to order the full amount, to determine what the full amount of the restitution is. And because I know the parents are responsible up to $25,000 each, and they're probably in the near future the only hope of any money being received, and, actually, their financial situation is quite poor also, I still will order 25,000. I will make an order that each of the minors is jointly and severally liable along with their parents for the 25,000 amount. [¶] . . . So that's the court's intent, but to do that we do need those other two amounts, the Yermo [church] and the community center. So we'll direct probation to look into those amounts. Then the court would add the three amounts together and determine the percentage and divide the restitution according to that percentage. [¶] Any objection to that procedure?" The prosecutor responded, "No, your Honor." Counsel for K.G. and counsel for W.W. both submitted. The court then set another attorneys only restitution hearing for February 16, 2012.

At the hearing on February 16, 2012, the court stated that, at the last hearing, it indicated it would set the restitution amount at $25,000 for the minors, joint and several. The court acknowledged that the amount it was setting was "far below the damage done." The court stated the reason it was ordering less than full restitution was "because these are families that have no resources." The court explained that "[t]here really is no expectation of payment. We will go with the amount the parents are legally responsible for is [*sic*] $25,000. Our problem was we only had an amount for Silver Valley Church. We did not have an amount for the Yermo Church or the community center." The court ordered $25,000 in restitution to Silver Valley Church, and reserved restitution for the

6

other two victims, stating that if it received information on their claims, it would determine the percentage of the $25,000 that each would receive.

## ANALYSIS

### No Reversal of the Restitution Order Is Required

The People contend that the juvenile court's restitution order was unauthorized by law and in excess of jurisdiction, since juvenile courts "are commanded to order full restitution [for victims], and are prohibited from considering a minor's ability to pay." We conclude that the People are estopped from complaining that the court erred by not ordering full restitution since the prosecutor agreed to the lesser amount that the court ordered. Furthermore, the law does not support the People's claim that "full victim restitution must be ordered in juvenile delinquency cases." In addition, the record does not clearly support the People's claim that the court based its order on the minors' ability to pay.

A. *Relevant Law*

"[I]n 1982, the voters passed Proposition 8 making entitlement to restitution the constitutional right of every crime victim. (Cal. Const., art. I, § 28, subd. (b).) This constitutional provision also directed the Legislature to enact laws empowering trial courts to order restitution when sentencing convicted criminals. (*Ibid.*)" (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 796.) The California Constitution, article I, section 28, subdivision (b), provides: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the

7

right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer."

The Legislature adopted section 730.6 to implement the constitutional right to restitution. (*In re Tommy A.* (2005) 131 Cal.App.4th 1580, 1587; *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132, fn. 4.) Section 730.6, subdivision (a)(1), provides that, "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor." Subdivision (h), provides that: "Restitution ordered pursuant to subparagraph (B) of paragraph (2) of subdivision (a) shall be imposed in the amount of the losses, as determined. . . . The court shall order full restitution *unless it finds compelling and extraordinary reasons for not doing so*, and states them on the record. A minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order. A restitution order . . . to the extent possible . . . shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602 . . . ." (Italics added.)

Welfare and Institutions Code section 730.7, subdivision (a), provides: "In a case in which a minor is ordered to make restitution to the victim or victims, or the minor is ordered to pay fines and penalty assessments under any provision of this code, a parent or guardian who has joint or sole legal and physical custody and control of the minor shall

8

be rebuttably presumed to be jointly and severally liable with the minor in accordance with Sections 1714.1 and 1714.3 of the Civil Code for the amount of restitution, fines, and penalty assessments so ordered, up to the limits provided in those sections, *subject to the court's consideration of the parent's or guardian's inability to pay*." (Italics added.) Welfare and Institutions Code section 730.7 "is a procedural variation on the theme of vicarious *civil tort* parental liability articulated in Civil Code section 1714.1." (*In re Michael S.* (2007) 147 Cal.App.4th 1443, 1451.) Civil Code section 1714.1, subdivision (a), provides that "[a]ny act of willful misconduct of a minor that results in injury or death to another person or in any injury to the property of another shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct." The joint and several liability of the parent or guardian is limited to $25,000. (*Ibid*.)

B. *The Parties Agreed on the Amount of Restitution*

The People claim that the court was required to order full restitution, and that it "act[ed] contrary to law" when it set restitution at $25,000, based on the minors' inability to pay. Assuming arguendo that the court was not authorized to set the order at $25,000, we nonetheless conclude that the People are estopped from complaining about the order since the prosecutor agreed to the lesser amount.

"When, as here, the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.]" (*In*

9

*re Griffin* (1967) 67 Cal.2d 343, 347-348 (*Griffin*).) "A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when '[t]o hold otherwise would permit the parties to trifle with the courts.' [Citation.]" (*Id*. at p. 348.)

The record here clearly demonstrates that the parties discussed the issue of victim restitution and came to an agreement concerning the amount the court should order. At the outset of the restitution hearing on January 18, 2012, the prosecutor expressly acknowledged that the parties had a conference in the courtroom (although the conference was unreported). The prosecutor addressed the court and said that, "[y]our intention pursuant to our conference in the courtroom [was] to set a maximum of 25,000 on each kid or 25,000 for three [victims] to split." The court said, "Well, that's going to be joint and several on the $25,000," and it added that they had neglected to discuss how they would allocate the money to the three victims. The court then explained that in a civil case, they would normally add up all the claims and figure out the percentage owed to each victim. Counsel for K.G. agreed to the procedure. The prosecutor also agreed, as shown in her response that now that she and minors' counsel "[had] come to an agreement" and "[knew] what [they were] doing," they just needed to get the amounts claimed from the victims. The court acknowledged that the total amount of the claims would "come close to half a million dollars," and went on to state the reason why it was not ordering full restitution. It then ordered the parents and minors to be jointly and severally liable for the $25,000 amount and explained that it would determine the percentage of the $25,000 for each of the victims upon receipt of the claims. When the court asked if there were any objections, the prosecutor said no. The People clearly

10

consented to the restitution amount and process of dividing the $25,000 among the victims.

The People do not dispute that they agreed to the victim restitution order of $25,000. Nonetheless, they urge this court to reverse the order and direct the juvenile court to order full restitution. Based on this record, we conclude that the People are estopped from challenging the restitution order. Although we recognize that the restitution order is well below the amount of the victims' claims, as did the juvenile court, we will not permit the People to trifle with the courts. (*Griffin*, *supra*, 67 Cal.2d at p. 348.)

We further note that the court held two restitution hearings, and the People, represented by the prosecutor, could have objected to the restitution order at any time. She did not. Thus, aside from being estopped from challenging the restitution order, the People have waived their argument on appeal. (*People v. Tillman* (2000) 22 Cal.4th 300, 303.)[4] To the extent the People claim that the issue was not waived since the restitution order was "unauthorized and in excess of jurisdiction, as the court has no authority to set

---

[4] We acknowledge the People's argument that, even though the prosecutor failed to object below, the issue is not waived since "the prosecution has no power to waive or limit the victim's state constitutional right to restitution." The People rely on *People v. Valdez* (1994) 24 Cal.App.4th 1194, in which the court stated that the prosecution has no authority to "bargain away the victim's constitutional and statutory right to restitution." (*Id.* at p. 1203.) However, in the instant case, the prosecutor did no such thing. As stated in *Valdez*, courts must order restitution in cases where a victim has suffered economic loss as a result of the defendant's conduct. (*Id.* at p. 1202.) The court here did order victim restitution.

11

the award at less than full restitution, based on inability to pay," we disagree. (See *post*, § C.)

C. *The People's Claims Are Unsupported*

The law and the record do not clearly support the People's claims of error. The People claim that "full victim restitution must be ordered in juvenile delinquency cases." The minors cite section 730.6, subdivision (h), which provides: "The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." The People respond that the California Constitution "has clearly been amended to remove the 'compelling and extraordinary' language still found in the statutes," and that, consequently, "[c]ourts no longer have the power to withhold victim restitution based on 'compelling and extraordinary' reasons." The People specifically assert that Article I, section 28, which provides for victim restitution, was amended by the Victims' Bill of Rights Act of 2008: Marsy's Law (Marsy's Law). The People state that, in enacting Marsy's Law, "[t]he electorate, acting as legislators, has removed the 'compelling and extraordinary' language from the California Constitution, with the goal of ensuring that restitution be ordered 'without exception' in all cases where victims suffer a loss." The People conclude that "[t]o the extent that section 730.6 retains the 'compelling and extraordinary' language, it is in contradiction to the higher authority of the State constitution." We disagree.

Here, there is no conflict between Marsy's Law and section 730.6. The constitutional right to victim restitution was established in the California Constitution when Proposition 8 was enacted by the voters in 1982. (*People v. Birkett* (1999) 21

12

Cal.4th 226, 230.)  Marsy's Law merely reaffirmed a victim's right to "seek and secure" restitution, and established certain victims' rights (e.g., the rights to be notified of and to be present at all public proceedings, to be heard at any proceeding, and to receive a copy of the presentence report upon request.)  (See Cal. Const., art. I, § 28, subds. (b)(7), (8), (11), & (b)(13)(A); *People v. Smith* (2011) 198 Cal.App.4th 415, 439.)  The general affirmance of a victim's right to seek and secure restitution articulated in Marsy's Law in no way conflicts with the Legislature's implementation of victims' right to restitution through existing statutory provisions, such as section 730.6.

The People then argue that the court violated Welfare and Institutions Code section 730.6, subdivision (h)'s prohibition on considering a minor's ability to pay when it set the restitution amount at $25,000.  The People claim that the court "declined to order full restitution, based on the minors' inability to pay" and, as such, its restitution order "was unauthorized and in excess of the court's jurisdiction."  We note that Welfare and Institutions Code section 730.6 imposes direct liability for restitution on a minor, and it states that "[a] minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, *nor shall inability to pay* be a consideration in determining the amount of the restitution order."  (Welf. & Inst. Code, § 730.6, subd. (h), italics added.)  In contrast, Welfare and Institutions Code section 730.7 imposes joint and several liability on the parents of the minor for the economic damages arising out of the criminal acts of their child.  (*In re Jeffrey M.* (2006) 141 Cal.App.4th 1017, 1025.)  Welfare and Institutions Code section 730.7 limits a parent's

13

liability to $25,000, and it expressly *permits* a court to consider a parent's inability to pay. (Welf. & Inst. Code, § 730.7, subd. (a); Civ. Code, § 1714.1.)

The court here was aware of its discretion to order less than the full amount of restitution, if it stated compelling and extraordinary factors for doing so on the record. The minors assert that the court found the extraordinary circumstances to be: (1) the plea to accessory after the fact without a hearing regarding the factual connection; (2) the inability of the minors to pay full restitution; and (3) the $25,000 maximum liability for restitution of the minors' parents. The minors state that, of these factors, only the minors' inability to pay was unauthorized. The court did mention that the minors' pleaded to being accessories after the fact, and then said it "look[ed] at the amount and the family background of these two minors," and determined that there was no apparent hope "they could ever pay the kind of money we're talking about." The court added that it knew the parents were responsible for up to $25,000 each and opined that "they [were] probably in the near future the only hope of any money being received." After noting that the parents' financial situation was "quite poor also," the court ordered that "each of the minors is jointly and severally liable along with their parents for the $25,000 amount." Similarly, at the following restitution hearing, the court stated that it was ordering less than full restitution "because these are families that have no resources." On this record, it is difficult to affirmatively say that the court declined to order full victim restitution based only on the minors' inability to pay, as the People claim. The court appeared to be referring to the ability to pay of the minors and the parents interchangeably, and/or

14

together.  Moreover, the court was permitted to consider the parents' inability to pay in setting the amount of restitution.  (§ 730.7, subd. (a).)

Ultimately, in light of the People's agreement to the amount of the restitution order, the failure to object to the restitution amount, and the lack of support for the People's claims, we affirm the court's order.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST_____<br>Acting P. J.


We concur:


McKINSTER_____<br>            J.


CODRINGTON_____<br>            J.

15