Filed 8/3/16  In re D.H. CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| In re D.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.H.,<br><br>        Defendant and Appellant. | A145212<br><br>(Alameda County<br>Super. Ct. No. HJ06334702) |

## I.

## INTRODUCTION

D.H. appeals from a victim restitution order imposed as part of the disposition of a juvenile delinquency wardship petition filed against him by the Alameda County District Attorney.  Appellant contends the order that he pay $1,374.99 in victim restitution was an abuse of discretion because it was not reasonably related to his wrongful conduct, or to his rehabilitation.  We disagree and affirm the order.

## II.

## PROCEDURAL BACKGROUND

On June 4, 2014, the Alameda County District Attorney filed a petition under Welfare and Institutions Code[1] section 602, subdivision (a) alleging that appellant committed an assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1). On June 23, an amended petition was filed in which the assault charge was alleged as a misdemeanor rather than a felony. That same day, appellant admitted the reduced assault charge.

In an August 2014 disposition report, the Alameda County Probation Department recommended that appellant be declared a ward of the court, placed on probation, and ordered to pay restitution to Sabrina Finister (Finister), the victim of appellant's assault. Finister had submitted a claim for restitution in the amount of $2,835.47 to repair damage to her vehicle and replace property that was taken from her during the commission of the assault. The probation department recommended that the court hold appellant and a coparticipant named J.P. jointly and severally liable for Finister's losses.

A disposition hearing was held on August 28, 2014. Finister appeared and was questioned about her restitution claim. Appellant objected that he was not legally responsible for Finister's losses because while he was engaged in the conduct which resulted in the assault charge, a "completely separate group" took property from Finister's car and damaged her vehicle. After further discussion, the hearing was continued.

On September 5, 2014, the court issued a disposition order declaring appellant a ward of the court, and ordering him to be placed in a suitable family or group home. Conditions of probation also were ordered. The restitution matter was continued several additional times.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

On March 6, 2015, the juvenile court held a restitution hearing in connection with the disposition of appellant's petition as well as a petition that had been filed against J.P. arising out of the same June 2014 incident. After the "evidentiary" portion of the hearing concluded, the matter was continued so appellant could file a legal brief. In that brief, appellant argued that J.P. and others were solely responsible for Finister's damages, and therefore appellant could not be required to pay any restitution as a matter of law.

At the continued restitution hearing on March 27, 2015, appellant maintained that he was not liable for Finister's damages, but argued in the alternative that if he was required to pay restitution along with J.P., then $1,374.99 was an "appropriate" amount for the court to order them to pay. At the conclusion of the hearing, the court ordered appellant to pay restitution to Finister in the amount of $1,374.99, jointly and severally with J.P.

## III.

## DISCUSSION

We review the restitution order for abuse of discretion. (*In re Dina V.* (2007) 151 Cal.App.4th 486, 490; see *In re Johnny M*. (2002) 100 Cal.App.4th 1128, 1132.)

### A. *Acts Relating to the Admitted Assault Charge*[2]

In May and June of 2014, the San Leandro Police Department responded to several reports that a large group of individuals was walking through different parts of the city creating disturbances and committing crimes, including battery and robbery. Such disturbances had also been reported in nearby communities.

On June 2, 2014, at about 4:15 p.m., officers were dispatched to Blossom Way and East 14th Street, where it was reported that someone had been hit in the face with a pistol and robbed, and that the assailant was part of a group that fled towards East 14th and Estabrook Streets. Police suspected this same group had been engaged in a "large fight"

---

[2] The facts are taken from the evidence admitted by the court during the March 2015 restitution hearings, which included three police reports, and the testimony Finister gave at the August 28, 2014 disposition hearing.

3

earlier that day in the vicinity of the San Leandro High School Library. Approximately 30 minutes later, police sergeant Jose Delgado broadcast a request for officer assistance to detain appellant and others at East 14th and Estabrook Streets. Officer Anthony Pantoja responded to Delgado's request, found appellant walking away from the scene, and placed him in handcuffs.

Delgado subsequently reported that he had been patrolling the area when someone pointed him in the direction of a fight in the middle of the street. Delgado observed appellant, another minor later identified as J.P., and about 10 to 15 additional males and females engaged in a fight with Finister and another female. When Delgado activated his emergency light and siren, the group began to splinter into smaller groups. After requesting backup, Delgado got out of his car with the intention of breaking up the fight. He then saw appellant "aggressing" toward Finister and her daughter. Appellant pulled off his shirt, shouted derogatory names at Finister, and challenged her to a fight. At the same time, J.P. approached from another direction, and raised a metal chair over his head as if to throw it at Finister or Delgado. When Delgado told J.P. to put the chair down, he threw it in the roadway, and the entire group began to walk away while continuing to verbally taunt Finister and her family. By that time, additional units were arriving at the scene and Delgado broadcasted to them that appellant and J.P. needed to be detained. Officer Pantoja detained and handcuffed appellant without incident. Other officers detained J.P. and numerous additional suspects, some in handcuffs and others not. J.P. continued to taunt the victims and attempted to incite the large group of detained individuals to create a further disturbance with police.

Finister gave a statement at the scene. She reported that she was trying to pull her car into a parking lot but there was a large group of people blocking her entry. She asked them to move and the group became belligerent, surrounding her car, cursing at her and kicking her car. Finister and her daughter got out of the car and began yelling back at the crowd. The group became hostile and threatening toward Finister and her family. Appellant picked up a metal chair, raised it over his head, directed it toward Finister and ultimately threw it at Finister's daughter. While Finister was dealing with appellant and

4

other members of the group, she heard someone say "They're taking the car." Finister then saw that three people were in her car where her two-year-old grandson was still in his car seat. J.P. began to drive as the other two ransacked the car for property. When Finister ran toward them, the intruders exited her car, dropping her daughter's purse on the ground. Then J.P. picked up the chair that appellant had thrown and advanced toward Finister. At that point, the police intervened. Finister's daughter noticed that her tablet computer and cell phone were gone from her purse.

An officer canvassing the scene interviewed a female witness. While sitting in her own car, this witness saw a group of juveniles attempt to stop Finister's car as she was driving in the parking lot. The witness also saw appellant pick up a chair to hit Finister, and J.P enter the driver's seat of Finister's car. The witness also reported that she saw individuals remove a purse from the car.[3]

After appellant was arrested and waived his Miranda rights, he gave a statement to police. Appellant reported that he was walking through a parking lot with his friends when a woman told them to get out of the way. A verbal altercation ensued which made appellant so angry that he grabbed a nearby chair and threw it at the woman with the intent of striking her with it. Appellant also admitted that he had taken off his shirt and was challenging the woman to a fight when police arrived.

## B. *The Juvenile Court Order*

As our procedural summary reflects, appellant opposed the probation department's recommendation that he pay victim restitution to Finister on two grounds: first, that he was not "liable" for the financial harm that Finister suffered; and second that Finister's claim should be reduced to $1,374.99, which was a more "appropriate" amount. Since the juvenile court ruled in favor of appellant (and J.P.) with respect to the amount of

---

[3] Apparently the female witness was subsequently interviewed by a defense investigator. That subsequent statement does not appear in the record on appeal. Nevertheless, appellant's summary of appellant's role in the event is consistent with the information from the police report which we recount above.

5

restitution, we limit our review to the order holding appellant jointly and severally liable for Finister's damages. The court offered the following explanation for that ruling:

"It does appear to me [appellant] was part of a larger group on that day. He was with [J.P.] not only at the time of the incident, but he is also identified as being with [J.P.] earlier in another group, in another incident; not that he's responsible for the assault that happened at that time, but that he was part of a group and was identified with [J.P.]. So it's not just a coincidence that he was later identified with [J.P.] as far as this incident.

"As far as the specifics of this incident—even though to the Court as the cases show, an uncharged theft certainly doesn't mean that the Court doesn't have the ability to see if there's a connection between criminal acts and loss that resulted from those criminal acts. It appears that both [J.P. and appellant] at the same time approached the victim, Ms. Finister, while she was in her car and attacked her. They attacked her physically. They attacked her property by damaging her vehicle, by taking things out of her car.

"As [counsel for J.P.] indicated, although [appellant] didn't get in the car and drive it like [J.P.], . . . he certainly engaged in Ms. Finister's attack. He at least distracted her allowing [J.P.] and some other individuals—I think one was a female—as part of that group who actually took items from the vehicle. Somebody else, maybe another individual, damaged the vehicle. But this is all part of a group attack on the victim. And for [appellant] to be able to be exonerated from responsibility for restitution as part of a group attack—because he didn't do—he wasn't identified specifically as having done each and every act that we forgot to go and see what act he did and can't specifically identify as having done an act done by other members of the same group in order to find him liable—then we can't properly rehabilitate him.

"This is part of a dynamic that the Court recognizes is recurring. And I do see that so many of my cases here, particularly involving juveniles, it becomes [a] group-peer dynamic where they do criminal offenses together with their peers. It doesn't have to be a huge group of 200. It doesn't have to be a group of 10 or 15. It could be two or three, and that seems to be the situation here. When there's group activity, peer activity like

6

here, they can't avoid responsibility for restitution when their criminal acts led to physical injuries, property damage or property loss. And that's what I see here.

"So as a result I find foundationally [appellant]'s activities led to the property damage and property loss of Ms. Finister with regards to her car and the property inside the car and I find him liable for restitution purposes. And I think it's very important for his rehabilitation to understand not only can he [not] assault people, but he also can't be part of the group that's attacking people, that's damaging their property and taking their property."

### C. *Analysis*

" 'In 1982, by initiative measure, the voters passed Proposition 8 giving all crime victims the constitutional right to receive restitution from the offender who was convicted of committing a crime against them. [Citation.] The Legislature implemented this section by amending the restitution statutes applicable to adult offenders [citation] and section 730.6, which is the parallel provision applicable to juvenile offenders.' [Citation.]" (*In re T.C.* (2009) 173 Cal.App.4th 837, 844, fn. omitted.) Section 730.6 establishes detailed procedures and requirements which "govern[ ] restitution in cases where a minor is adjudicated a ward of the court pursuant to section 602." (*In re Johnny M.*, *supra*, 100 Cal.App.4th at p. 1131; *In re Tommy A.* (2005) 131 Cal.App.4th 1580, 1587.)

The purpose of the statute is set forth in section 730.6, subdivision (a)(1), which states: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor." When a minor comes within the juvenile court's jurisdiction under section 602, section 730.6 mandates that the court "order the minor to pay, in addition to any other penalty provided or imposed under the law," restitution to the victim or victims of his or her offense. (§ 730.6, subd. (a)(2)(B).)

When imposed as a condition of probation, the juvenile court's broad discretion to impose restitution is not limited to losses directly caused by the minor's criminal conduct.

7

(*People v. Lai* (2006) 138 Cal.App.4th 1227, 1247–1248; *In re T.C.*, *supra*, 173 Cal.App.4th at p. 847; *In re I.M.* (2005) 125 Cal.App.4th 1195, 1209-1210 (*I.M.*).) "That a defendant was not personally or immediately responsible for the victim's loss does not render an order of restitution [as a condition of probation] improper. . . . [T]he question simply is whether the order is reasonably related to the crime of which the defendant was convicted or to future criminality." (*I.M.*, *supra*, at p. 1209; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1123; *People v. Lent* (1975) 15 Cal.3d 481, 486-487.)

For example, in *I.M.*, *supra*, 125 Cal.App.4th 1195, the minor was present when a fellow gang member committed murder. He approached the victim along with the shooter and, after the shooter issued a gang challenge and shot at the victim, the minor and the shooter ran away together, and the minor held the gun for the shooter. On these facts, the *I.M.* court affirmed a restitution order requiring the minor to pay for the victim's funeral expenses, finding the order was reasonably related to the minor's offense of being an accessory after the fact. (*Id.* at pp. 1208–1210.) Although that offense took place after the murder occurred, the minor had been "promoting and assisting gang conduct" that led to the loss. (*Id.* at p. 1210.) The restitution order thus served the rehabilitative purpose of making the minor aware of the consequences of his gang membership "by compelling him to share responsibility for the gang-related activities in which he in some way participated." (*Ibid.*) It also forced him to face the "emotional and financial effects of gang-related activity on the family of the victim," and was therefore directly related to his future criminality. (*Ibid.*)

Applying the principles summarized above, we conclude that the trial court properly exercised its discretion in this case. The factual evidence regarding the events of June 2, 2014, including those involving Finister specifically, as well as more broadly in nearby parts of San Leandro, led the court to reach three important conclusions: (1) appellant was engaged with a group of youths who were deliberately causing public disturbances throughout the city as a curtain behind which they committed both assaults and property crimes on those who happened to be in their path; (2) while appellant did not take Finister's property himself, his confrontation and physical attack on Finister

distracted her from her car and property, allowing J.P. and others involved with him in the broader disturbance to damage her car and take personal property from within it; and (3) imposition of restitution under these circumstances was an important component of appellant's rehabilitation in that it stressed his accountability for the indirect, as well as the direct, consequences of his actions.

As discussed above, restitution may be imposed where the defendant was not "personally or immediately" responsible for the loss being compensated, when the order is "reasonably related to the crime of which the defendant was convicted or to future criminality." (*I.M.*, *supra*, 125 Cal.App.4th at p. 1209; see also *People v. Carbajal*, *supra*, 10 Cal.4th at p. 1123; *People v. Lent*, *supra*, 15 Cal.3d at pp. 486-487.)  Here, the loss to Finister was reasonably related to the misconduct of appellant which created the opportunity for those in his company to damage and take Finister's property while she was distracted by appellant's assaultive conduct.  Moreover, appellant's participation as a member of a large group of youths misbehaving throughout San Leandro that day encouraged other members in the group to commit crimes against persons with whom they had incidental contact as they roamed the neighborhoods.  In addition, it was reasonable for the court to conclude that making appellant responsible for this monetary loss would impress on him the important lesson that there are indirect consequences for one's actions that he cannot avoid—a lesson that will further his rehabilitation.

## IV.
## DISPOSITION

The victim restitution fine of $1,374.99 is affirmed.

9

_____

RUVOLO, P. J.

We concur:

_____

RIVERA, J.

_____

STREETER, J.

A145212, *In re D.H.*

10