Filed 1/28/15  In re J.A. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.A.,<br><br>        Defendant and Appellant. | A141009<br><br>(Alameda County<br>Super. Ct. No. SJ07716308) |

**I.**

**INTRODUCTION**

J.A. appeals a February 2014 disposition order dismissing her juvenile wardship case.  She contends the juvenile court erred by converting an unpaid restitution order into a judgment requiring her to pay $1,311.86 to the victim of an automobile theft that she committed in 2008 while she was a ward of the court.  We reject this contention and affirm the order.

**II.**

**STATEMENT OF FACTS**

In June 2007, the Alameda County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a)

(section 602(a).)[1]  The petition alleged that 14-year-old J.A. came within the juvenile court's jurisdiction because she had committed burglary and petty theft by unlawfully taking jewelry from a department store.  In August 2007, J.A. was adjudged a ward of the court after she admitted the petty theft in exchange for dismissal of the burglary charge.  She was  placed on home probation with various terms and conditions.

In November 2007, a new section 602(a) petition was filed after J.A. was cited by police for gang-related vandalism.  The petition also alleged that J.A. failed to attend school regularly, left her home and the county without permission, and that her current whereabouts were unknown.  An arrest warrant was issued and subsequently recalled after J.A. appeared and admitted a charge of defacing school property.  In December 2007, the court continued the wardship and placed J.A. on home probation with juvenile electronic monitoring.

In February 2008, J.A. removed her electronic monitor and failed to return home from a tutoring appointment.  She was later picked up by a sheriff investigating a report of an incorrigible minor and admitted the probation violation.  In May, J.A. ran away from home, was picked up by police, and eventually admitted another probation violation.  In June, J.A. failed to report to school and disappeared again.  Her whereabouts were unknown until July 12, when she was arrested by Hayward police for vehicle theft, evading police and violating probation.

In July 2008, J.A. was the subject of another new section 602(a) petition which alleged that she committed six offenses—two counts of vehicle theft, two counts of receiving stolen property, attempted robbery and battery.  On July 23, J.A. admitted one vehicle theft and several probation violations in exchange for dismissal of the other charges.  Before accepting J.A.'s waiver and plea, the juvenile court expressly advised her that the "facts and restitution" remained open matters with respect to all charges.  On August 7, the juvenile court made a formal finding that J.A. had failed on home

---

[1]  Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

probation, removed J.A. from her home, and committed her to the care of the probation department for placement in an appropriate foster home, private institution or county facility.

In September 2008, the victim of J.A.'s July 12 vehicle theft requested reimbursement for losses he incurred for towing, storage and repair costs to his vehicle which J.A. damaged while attempting to evade police. On September 19, the juvenile court ordered J.A. to pay victim restitution. On November 13, 2008, J.A. stipulated that the amount of her restitution obligation would be $1,311.86, and an order directing her to pay that amount was included in the juvenile court's minute order.

A May 2009 supplemental petition alleged that J.A. absconded from her group home placement. An arrest warrant was issued and J.A. was arrested pursuant to that warrant on May 19. The following day, the warrant was recalled, J.A. admitted the probation violation, and the out-of-home placement was continued. However, in August 2009, after some satisfactory progress, J.A. was returned to probation in her mother's home.

In January 2010, J.A.'s probation officer reported she had made great progress and remained on probation for "financial obligations only." In addition to the November 2008 restitution order, J.A. had incurred several restitution fines and she had not satisfied any part of these financial obligations. At a January 12 hearing, J.A. appeared with her mother and advised the court of their intention to start making payments in the near future, and the matter was continued.

On April 12, 2010, J.A. appeared at a progress report hearing and told the court that she had tried to pay her restitution obligation but the person she tried to pay told her she needed to submit paperwork from the court. J.A. was advised where to go to make her payment and the matter was continued again.

At the next progress report hearing, on September 27, 2010, J.A. told the court that she did not have an income to pay her restitution obligation and that she had been talking to her attorney about her options. Defense counsel then reported that he had advised his client of the option of requesting termination of probation which would result in the entry

a judgment again her for the unpaid restitution, but that he advised her to remain on probation for another year "to see if she can pay some of this down." The court urged J.A. to try to start making monthly payments and continued the matter again.

On January 10, 2011, J.A. reported that she still did not have a job and requested that the matter be continued for six months to give her more time to find work. The court inquired again if J.A. could make some small payment but she demurred, stating that if she made one payment, she knew that would be her obligation the following month and she would not be able to pay that much. The matter was continued for six months.

J.A. failed to appear at a July 11, 2011 hearing. The probation officer reported that she owed victim restitution in the amount of $1,311.86 and fines totaling $150 and that she would turn 21 in 2013. The court issued a bench warrant for J.A.'s arrest. However, the warrant was recalled and the progress report was rescheduled for August 10 based on a representation from defense counsel that J.A. forgot about the prior court date. At the August 10 hearing, J.A. and her counsel both advised the court that J.A. would be able to start making payments in a month or two. The matter was continued for two months.

In October 2011, J.A. failed to appear for a progress report and the juvenile court stated it would issue another warrant for her arrest. The minute order for that hearing states "A Warrant of Arrest is issued to expire on 09/05/2013." An arrest warrant was executed on October 13, 2011. The warrant stated that J.A. violated her probation and failed to appear for a progress report. It did not contain an expiration date or any language indicating that the warrant would be recalled after a given date. Apparently there were no further developments in this wardship proceeding until 2014.

Pursuant to a request by J.A.'s counsel, a hearing was set for January 16, 2014, to consider recalling the bench warrant and dismissing the wardship proceeding.[2] J.A. did not personally appear at the hearing, but her counsel acknowledged she owed "quite a bit

---

[2] Appellant's opening brief erroneously states that the hearing was requested by the district attorney. This error is repeated in respondent's brief. The People also appear to assume mistakenly that the October 2011 arrest warrant expired on J.A.'s birthday.

of restitution," and requested another hearing date to submit the necessary paperwork. The court observed that J.A. had "absented herself" for quite a while, and that a warrant had been issued in 2011. It requested that the attorneys work together to prepare a "JV-790," and then put the matter over.

On January 30, 2014, J.A. filed a motion requesting that "her matter be dismissed in its entirety, without the issuance of an abstract of judgment against her." J.A. argued that the court no longer had jurisdiction to issue an abstract of judgment because she had turned 21 on September 5, 2013.

On February 3, 2014, the juvenile court denied J.A.'s motion, signed an "Order For Restitution and Abstract of Judgment" (the 2014 Restitution Order), terminated probation, recalled the arrest warrant, and dismissed the wardship. The 2015 Restitution Order requires J.A. to pay the victim of her July 2008 auto theft $1,311.86 pursuant to the prior court order and J.A.'s prior stipulation. J.A. filed a notice of appeal that same day.

## III.

## DISCUSSION

"Section 602 provides that any person who is under the age of 18 years when he or she violates any law of this state 'is within the jurisdiction of the juvenile court, which may adjudge [him or her] to be a ward of the court.' " (*In re Antoine D*. (2006) 137 Cal.App.4th 1314, 1320.) "When a juvenile is declared a ward of the juvenile court, the juvenile becomes 'subject to its continuing jurisdiction.' [Citation.]" (*Ibid*.) The court may retain jurisdiction over the ward until he or she reaches the age of 21, or the age of 25 if the wardship resulted from the commission of specified crimes that are not at issue in this case. (§ 607, subds. (a)-(d).)

Relying on section 607, J.A. contends that the juvenile court lost jurisdiction over her once she turned 21 in September 2013, and that it no longer had the power to "issue" an abstract of judgment against her at the February 2014 hearing.

Before we address the problems with J.A.'s jurisdictional challenge, we must clarify the nature of the appealed order. As noted in our Introduction, J.A. filed an appeal from the February 2014 disposition order. We accept for purposes of this appeal that the

5

disposition order incorporated the 2014 Restitution Order that the court signed that same day. The 2014 Restitution Order consists of a two-page Judicial Council form referred to by the juvenile court and parties as the "JV-790." The court signed the first page of the document which is titled "Order for Restitution." The second page contains an application for an abstract of judgment, which was completed by the probation department on behalf of the victim of the 2008 car theft. The second page also contains an abstract of judgment, partially completed but not signed by the clerk of the court. Thus, in making its disposition orders at the February 2014 hearing, the juvenile court did not issue an abstract of judgment, as J.A. contends. Accordingly, we construe J.A.'s appeal as challenging the juvenile court's jurisdiction to enter the 2014 Restitution Order against her. That challenge fails for several reasons.

First, the juvenile court had jurisdiction over J.A so long as she was the subject of an outstanding arrest warrant. (§ 607, subd. (e) (section 607(e)).) Section 607(e) states: "The court may retain jurisdiction over any person while that person is the subject of a warrant for arrest issued pursuant to Section 663." Here, as discussed in our factual summary, the juvenile court issued a warrant for J.A.'s arrest in October 2011, before she turned 21, and J.A. remained subject to that warrant until the February 2014 hearing when it was recalled by the juvenile court. Thus, the court retained jurisdiction over J.A. until her case was dismissed at the February 2014 hearing.

J.A. contends that section 607(e) does not apply in this case because the October 2011 arrest warrant was not issued "pursuant to Section 663." (§607(e).) Section 663 states in relevant part: "Whenever a petition has been filed in the juvenile court alleging that a minor comes within the provisions of Section 601 or 602 of this code and praying for a hearing thereon, or whenever any subsequent petition has been filed praying for a hearing in the matter of the minor, a warrant of arrest may be issued immediately for the minor" if certain specified conditions are satisfied. (§ 663, subd. (a) (section 663(a)).)

J.A. construes section 663(a) as authorizing the issuance of an arrest warrant only upon the filing of a new wardship petition when the minor has not yet been taken into custody for the offense that triggered the filing of that new petition. J.A. fails to provide

6

any legal authority for her restrictive construction of section 663. More importantly, her interpretation is inconsistent with the plain language of the statute. The first part of section 663(a) refers to new petitions under sections 601 and 602. However, the second part of this subsection covers the remainder of a wardship proceeding, i.e., whenever a party files a petition "praying for a hearing in the matter of the minor." (§ 663(a).) Thus, section 663 is not restricted to situations involving new petitions.

J.A. argues that even if her arrest warrant was issued properly under section 663, that act did not extend the jurisdictional period because the court did not "avail itself" of the option to extend its jurisdiction when it issued the warrant. J.A. posits that the "permissive language" in section 607(e) establishes that a juvenile court "may retain jurisdiction" over a ward by issuing a warrant but is not required to do so. We reject this novel interpretation, which is not supported by legal authority or sound logic. The permissive language in section 607(e) gives the juvenile court the discretion to decide whether to issue an arrest warrant, the issuance of which extends the court's jurisdiction.

J.A. also contends that if the warrant did extend the jurisdictional period, the court expressly decided not to retain its jurisdiction beyond J.A.'s 21st birthday by issuing a warrant that expired on that very date. In fact, the 2011 arrest warrant did not expire on J.A.'s 21st birthday. The record reflects that the juvenile court did not address whether or when the warrant would expire at the October 2011 hearing or, as best we can tell, at an any other hearing in this case. Furthermore, although the minute order from the October 2011 hearing stated that the arrest warrant was "to expire on 09/05/2013," the warrant that the court actually issued did not contain any expiration date. Indeed, the record before us leads us to conclude that the very reason J.A. finally authorized her attorney to request a hearing in 2014 was so that the juvenile court could exercise its continuing authority to recall the arrest warrant and terminate her wardship case.

A second problem with J.A.'s jurisdictional challenge is that she underestimates the independent force of the November 2008 victim restitution order that was made when the juvenile court unquestionably had jurisdiction over her. That order was made pursuant to section 730.6, a statute that was enacted in order to implement Proposition 8.

7

" 'In 1982, by initiative measure, the voters passed Proposition 8 giving all crime victims the constitutional right to receive restitution from the offender who was convicted of committing a crime against them. [Citation.] The Legislature implemented this section by amending the restitution statutes applicable to adult offenders [citation] and section 730.6, which is the parallel provision applicable to juvenile offenders. [Citation.]" (*In re T.C.* (2009) 173 Cal.App.4th 837, 844.)

Section 730.6 establishes detailed procedures and requirements which "govern[] restitution in cases where a minor is adjudicated a ward of the court pursuant to section 602." (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1131; *In re Tommy A.* (2005) 131 Cal.App.4th 1580, 1587.) The purpose of the statute is set forth in section 730.6, subdivision (a)(1), which states: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct *shall* receive restitution directly from that minor." (Italics added.)

When a minor comes within the juvenile court's jurisdiction under section 602, section 730.6 mandates that the court "order the minor to pay, in addition to any other penalty provided or imposed under the law" restitution to the victim or victims of his or her offense. (§ 730.6, subd. (a)(2)(B).) The court is required to order full restitution unless a compelling and extraordinary reason for not doing so is stated on the record. Furthermore, the "minor's inability to pay" is not a compelling or extraordinary reason and may not be considered when determining the amount of the restitution order. (§ 730.6, subd. (h).)

In the present case, J.A. does not dispute that the November 2008 victim restitution order entered against her was mandated by section 730.6. Nor does she dispute the amount of victim restitution she was ordered to pay. In fact, J.A. expressly stipulated to that amount in the juvenile court. Nevertheless, J.A. insists that the November 2008 restitution order was no longer enforceable against her after she turned 21 because that event caused the court to lose jurisdiction over her.

Putting aside the fact that J.A. was subject to an outstanding warrant until February 2014, her theory is not tenable in light of two subdivisions of section 760.3, which expressly establish that an unpaid victim restitution order remains valid after the minor's probation is terminated and the wardship proceeding is dismissed. (§ 730.6, subd. (i) (section 730.6(i)); § 730.6, subd. (*l*) (section 730.6(*l*)).)

Section 730.6(i) states that a victim restitution order "shall be enforceable as a civil judgment pursuant to subdivision (r)." Section 730.6, subdivision (r) states that a judgment for a victim restitution order "may be enforced as provided in Section 1214 of the Penal Code." Penal Code section 1214, subdivision (b) establishes that a restitution order is "deemed a money judgment."

The statutory language in section 730.6(i) "is a clear indication that the Legislature envisioned the liability of the juvenile offender continuing on into adulthood—civil judgments may be enforced for 10 years [citations]." (*In re Michael S.* (2007) 147 Cal.App.4th 1443, 1456-1457.) Thus, the "[e]xtension of juvenile offender liability into adulthood" is an expected consequence under the language of section 730.6(i), and this consequence of the statute cannot be used to establish a compelling or extraordinary reason for excusing the minor from paying full restitution to a victim of her crime. (*Ibid*.)

Indeed, section 730.6(i) implicitly requires that an unpaid victim restitution order be converted to a judgment when a wardship proceeding is terminated. "Victim restitution 'is constitutionally and statutorily mandated in California. [Citations.]' [Citation.] Orders of restitution have the 'important purpose of preventing the victims of crimes from suffering economic loss.' [Citation.] Requiring a minor to pay victim restitution has both a rehabilitative and a deterrent effect. [Citation.] It 'impresses upon [the minor] the gravity of the harm he has inflicted upon another, and provides an opportunity to make amends. . . . [It] can . . . lead the minor to realize the seriousness of his crime, and to accept the responsibility for it.' [Citation.] These purposes are entirely consistent with the underlying statutory purpose of rehabilitating juveniles and are furthered by converting the restitution order to a civil judgment under section 730.6." (*In re K.C.* (2013) 220 Cal.App.4th 465.)

9

Furthermore, section 730.6(*l*) states: "Upon a minor being found to be a person described in Section 602, the court shall require, as a condition of probation, the payment of restitution fines and orders imposed under this section. Any portion of a restitution order that remains unsatisfied after a minor is no longer on probation shall continue to be enforceable by a victim pursuant to subdivision (r) until the obligation is satisfied in full."

Here, the November 2008 victim restitution order was a condition of probation that remained unsatisfied when J.A.'s probation was finally terminated in February 2014. Thus, under section 730.6(*l*) that restitution order continued to be enforceable by the victim of J.A.'s 2008 automobile theft.

J.A. appears to concede that section 730.6 converts an unpaid victim restitution order into a civil judgment. However, she points out that section 730.6 does not contain any provision which expressly authorizes the juvenile court to issue an abstract of judgment or which establishes some other mechanism for enforcing a judgment against a ward who is no longer subject to the juvenile court's jurisdiction. In light of this fact, J.A. posits that section 730.6 has no teeth after a ward turns 21 and the juvenile court's jurisdiction ends because, from that date on, the court no longer has the authority to issue an abstract of judgment. We disagree with J.A.'s reasoning and conclusion.

The victim restitution order was made in November 2008 when the court indisputably had jurisdiction to make an order under section 730.6. Pursuant to the terms of that statute, the unpaid restitution order was subsequently converted to a judgment when the wardship was terminated. Thus, section 730.6 implicitly authorized the court to sign the 2014 Restitution Order as part of its disposition order dismissing the wardship proceeding. Beyond that, the court did not sign the abstract of judgment, as J.A. mistakenly contends. Indeed, that ministerial act was left for the clerk of the court to complete.

Although we find no case law directly on point, our conclusion is consistent with the language in sections 730.6(i) and 730.6(*l*), and is supported by the important policies underlying the statute. "An order of direct victim restitution acts to make the victim whole, rehabilitate the minor, and deter future delinquent behavior [citations] . . . . ' "In

10

keeping with the [voters'] 'unequivocal intention' that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed." ' [Citation.]" (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305.)

Finally, we briefly address a third flaw in appellant's claim. J.A. does not challenge the juvenile court's jurisdiction in the fundamental sense of subject matter and parties. Rather her theory is that the court acted in excess of its jurisdiction by entering a judgment in February 2014 which enforced the 2008 restitution order because the "underlying juvenile proceeding . . . expired" when she turned 21 in September 2013.

" 'Unlike some other jurisdictional defects, a party may, by its conduct, be estopped from contesting an action in excess of jurisdiction.' [Citation.] When " 'the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when '[t]o hold otherwise would permit the parties to trifle with the courts.' " [Citations.]' [Citation.]" (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1092.)

Here, evidence in this record would support a finding that J.A. is estopped from challenging the February 2014 order. (See, e.g., *In re K.C.*, *supra,* 220 Cal.App.4th 465 [holding that delinquent minor was estopped from challenging juvenile court's authority to convert unpaid restitution order to a civil judgment].)[3] That evidence shows that this wardship case could have been terminated as early as January 2010 and that it would have been dismissed before J.A. turned 21 if not for the unpaid victim restitution order

---

[3] Because the parties did not consider the estoppel doctrine in their appellate briefs, we invited and accepted letter briefs addressing this issue.

11

and J.A.'s repeated requests for additional time to pay that order before a judgment was entered against her. J.A. exploited that accommodation, and then violated her probation by absenting herself from the court for several years. Thereafter, J.A. made the decision to reappear and avail herself of the juvenile court's jurisdiction by requesting a hearing so that the court could recall the arrest warrant and dismiss the wardship case. Under these circumstances, principles of estoppel preclude J.A. from challenging the court's authority to convert the unpaid restitution order to an enforceable judgment solely on the ground that she had already reached the age of 21.

## IV.
## DISPOSITION

The February 2014 disposition order is affirmed.

_____
RUVOLO, P. J.

We concur:


_____
REARDON, J.


_____
RIVERA, J.